FILED - WESTERN DIVISION
CLERK. U.S. DISTRICT COURT

JUN 28 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICU MEDICAL, INC., | CASE NO. SA CV 04-00689 MRP (VBKx) |
| Plaintiff, | **ORDER DETERMINING ATTORNEY FEES AND COSTS DUE TO ALARIS PURSUANT TO THE COURT'S APRIL 16, 2007 FEES ORDER** |
| v. | |
| ALARIS MEDICAL SYSTEMS, INC., | |
| Defendant. | |
| | |
| | |
| **AND RELATED COUNTERCLAIMS** | |

## I.

## INTRODUCTION

On April 16, 2007, this Court granted in part Defendant Alaris Medical Systems, Inc.'s ("Alaris") motion for attorney fees, costs and expenses under 35 U.S.C. § 285 and its motion for sanctions under Federal Rule of Civil Procedure 11 against Plaintiff ICU Medical, Inc. ("ICU"). (*See* Apr. 16, 2007 Order Granting in Part Defendant Alaris' Motion for Fees, Costs and Expenses Under 35 U.S.C. § 285 and Granting Defendant Alaris' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (the "Fees Order").) Specifically, the Court granted Alaris attorney fees

-1-

1 and costs it incurred as a result of the necessity to litigate: 1) ICU's request for a temporary
2 restraining order and preliminary injunction (the "TRO/PI"); 2) ICU's assertion of the "spike"
3 claims; and 3) ICU's construction of the term "spike" at claim construction (collectively, the "fee
4 award categories"). (Fees Order at 16.) Alaris then submitted an accounting for $5,501,791.10
5 in fees and $164,721.19 in costs it believed it was due under the Court's Fees Order.  ICU
6 submitted an opposition that claimed the total award should be no more than $1,825,000 to
7 $2,055,000.  On June 7, 2007, the Court heard oral argument to determine the specific amount of
8 fees and costs due to Alaris and took the matter under submission.

9      The Court finds that Alaris is due $4,587,622.44 in attorney fees and $164,721.19 in
10 costs for the reasons set forth below.  These amounts are awarded exclusively under Section 285.
11 No monetary sanctions are awarded under Rule 11.

12

13 **II.**

14 **DISCUSSION**

15      The factual and procedural background of this case has been documented in the Court's
16 prior orders and need not be repeated here.[1]  The parties currently disagree on the proper
17 accounting of attorney fees and costs awarded by the Court's Fees Order.  This disagreement
18 raises several discrete questions for the lodestar analysis and the assignment of liability for the
19 fees, namely: 1) what constitutes a "reasonable" number of hours billed; 2) what is a

---

[1] The factual and procedural background can be found in the following documents:
  1) July 30, 2004 Order Denying Plaintiff's Motion for a Preliminary Injunction and Findings of Fact and Conclusions of Law ("TRO/PI Denial Findings/Conclusions");
  2) July 17, 2006 Claim Construction Order (the "CC Order");
  3) July 17, 2006 Partial Summary Judgment Order for Noninfringement of "Spike" Claims and August 25, 2006 Findings of Fact Not Genuinely Contested and Conclusions of Law (collectively, "Spike PSJ Findings/Conclusions");
  4) Jan. 22, 2007 Order Granting Defendant Alaris' Motion for Summary Judgment of Invalidity of Plaintiff ICU's "Spikeless" Claims under 35 U.S.C. § 112 (the "Spikeless SJ Order");
  5) Feb. 21, 2007 Findings of Fact Not Genuinely Contested and Conclusions of Law in Support of the Court's 1/22/2007 Order Granting Alaris' Motion for Summary Judgment of Invalidity of "Spikeless" Claims under 35 U.S.C. § 112, ¶¶ 1 & 2 ("Spikeless SJ Findings/Conclusions"); and
  6) Apr. 16, 2007 Order Granting in Part Defendant Alaris' Motion for Fees, Costs and Expenses Under 35 U.S.C. § 285 and Granting Defendant Alaris' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (the "Fees Order").

1 | "reasonable" billing rate for those hours; 3) is Alaris entitled to fees for its work on the question

2 | of fees; 4) what costs are due to Alaris; 5) who is liable for the Court's award of sanctions under

3 | Rule 11 where that award is "subsumed" by the award under Section 285; and 6) is Alaris

4 | entitled to pre- and post-judgment interest on the award?

5 |

6 | **A.    Legal Standards**

7 |         Courts determine the amount of fees awarded under 35 U.S.C. § 285 using the "lodestar"

8 | analysis. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Mathis v. Spears*, 857 F.2d 749, 754

9 | (Fed. Cir. 1988). Under this approach, the Court first determines a lodestar figure by multiplying

10 | the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley*, 461

11 | U.S. at 433. Factors that should be considered in fashioning the reasonable number of hours

12 | expended and the reasonable hourly rate of the lodestar include: 1) the novelty and complexity of

13 | the issues; 2) the special skill and experience of counsel; 3) the quality of representation; 4) the

14 | results obtained; and 5) the contingent nature of the fee agreement. *See Kerr v. Screen Extras*

15 | *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (establishing "reasonable" lodestar calculation

16 | factors); *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) (explaining which

17 | *Kerr* factors are relevant to, or "subsumed by," the initial lodestar determination).[2] The

18 | reasonable hourly rate is also usually determined by reference to the rates charged by lawyers in

19 | the same legal community with comparable skills and reputations. *Blum v. Stenson*, 465 U.S.

20 | 886, 895 (1984). This presumptively valid lodestar figure may then be increased or decreased in

21 | "rare" and "exceptional" cases based on an evaluation of the *Kerr* factors not already subsumed

22 | in the initial lodestar calculation, if those adjustments are supported by "specific evidence" and

23 | "detailed findings" by the trial court. *See Pennsylvania v. Delaware Valley Citizens' Council for*

24 |

25 | _____

26 | [2] The twelve original Kerr factors bearing on the reasonableness of either the hours or rate of the lodestar calculation are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the

27 | case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the

28 | attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Kerr*, 526 F.2d at 70.

1   *Clean Air*, 478 U.S. 546, 565 (1986) (establishing the "strong presumption" of the validity of

2   fees based on a lodestar calculation that are to be adjusted only in "rare" and "exceptional"

3   cases); *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045-47 (9th Cir. 2000) (discussing

4   the *Kerr* factors that should be considered when deciding whether to adjust the lodestar figure

5   upward or downward).

6

7   **B.**   **Reasonable Hours**

8       First, the Court must determine whether Alaris' requested number of hours is greater

9   than, less than or the same number of hours that reasonably competent counsel would have

10  billed.  If the requested number of hours is greater than the number of hours reasonably

11  competent counsel would have billed, then the Court should reduce the requested number of

12  hours accordingly. *See Hensley*, 461 U.S. at 434 (describing the court's duty to eliminate hours

13  that are "excessive, redundant, or otherwise unnecessary").  The Court's Fees Order awarded

14  fees only for: 1) the TRO/PI; 2) ICU's assertion of the "spike" claims; and 3) ICU's construction

15  of the term "spike" at claim construction.  The parties disagree on how to accurately allocate

16  hours billed for these three fee award categories.

17      The Court notes at the outset that litigating this high-stakes patent infringement case was

18  a laborious task for both parties.  It involved three years of complex litigation of 57 claims in

19  four patents through numerous proceedings, all of which were hard-fought by both parties'

20  counsel.  However, as the Fees Order detailed, it was ICU's improper litigation tactics,

21  particularly those for which the Court awarded fees under Section 285 and Rule 11, that

22  increased the unnecessary burden this litigation placed on both parties.

23      The Court's view of the case belies that of ICU's expert on fees, who submitted a report

24  on fee amount and allocation that incorrectly characterized the litigation as being less arduous

25  and more straightforward than the record shows.  Her statistical analysis, though attractive for its

26  simplicity, examines the proceedings and hour allocations in a manner that is at times too rigid

27  and elsewhere misleading in light of what actually transpired during the litigation.  Even leaving

28  aside the issue of her qualifications as an expert able to make such an analysis, the Court finds it

-4-

1    provides little help in its fee determination task.

2        With this in mind, the Court is persuaded that Alaris' accounting of hours for its work on

3 the three fee award categories from June 2004 to March 2007 is a reasonable one. Alaris'

4 accounting indicates it adequately excluded hours that did not directly fall within the fee award

5 categories or that it otherwise made conservative reductions in the number of hours wherever the

6 allocation was ambiguous. Despite ICU's criticism of Alaris' billing summaries as being "block

7 billing" that precluded the accurate allocation of hours to relevant matters within each billing

8 block, there is little to suggest this caused a meaningful misallocation of hours or materially

9 inflated Alaris' overall hours amount by untoward instances of "rounding up" of hours. Further,

10 this billing practice is commonly used and ICU provides no reason to suspect it has resulted in an

11 unreasonable amount of total hours allocated to the three fee award categories, which touch on

12 the "bulk" of matters litigated in this case. Conversely, applying any particular reduction to the

13 bill to compensate for rounding that may or may not have had a net upward effect on Alaris'

14 billed hours would be unduly speculative and arbitrary in this particular case. Similarly, ICU's

15 criticism that Alaris overstaffed the case in a "partner-heavy" manner, allocating too many hours

16 to more expensive "partners," as opposed to less expensive "associates" or "paralegals," is

17 unconvincing. Given the complexity of the issues, the skill and experience of Alaris' counsel,

18 the quality of their representation and the results they obtained, the Court has no reason to

19 question Alaris' staffing choices or billable-hour allocations among staff. Accordingly, Alaris

20 has provided a reasonable summary of hours billed for its litigation of the TRO/PI, ICU's

21 assertion of the "spike" claims and ICU's construction of the term "spike."

22

23 **C.     Reasonable Rate**

24        Second, the Court must identify and apply a reasonable hourly rate. Cases describing the

25 lodestar calculation provide little helpful guidance in determining an appropriate hourly rate.

26 Courts are directed to compare the requested rates with the "prevailing market rate," which is the

27 rate "prevailing in the community for similar services of lawyers of reasonably comparable skill,

28 experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Many courts applying this standard

1 | conclude that a particular attorney's billing rate is relevant, but not dispositive, evidence of a

2 | reasonable hourly rate. *See, e.g., Guam Society of Obstetricians and Gynecologists v. Ada,* 100

3 | F.3d 691, 702 (9th Cir. 1996); *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d

4 | 403, 407 (9th Cir. 1990); *but see Mathur v. Bd. of Trustees of Southern Illinois Univ.,* 317 F.3d

5 | 738, 743 (7th Cir. 2003) (holding that "[o]nly if an attorney is unable to provide evidence of her

6 | actual billing rates should a district court look to other evidence, including rates similar

7 | experienced attorneys in the community charge paying clients for similar work").

8 |      In this particular case, Alaris' counsel's actual billing rates provide a reasonable basis for

9 | the lodestar analysis. This rate is somewhat lower than the rate Alaris proposes, which it

10 | calculated based on a "comparables" analysis of rates charged by Los Angeles-based patent

11 | attorneys of similar skill in similar matters. However, in the Court's view, Alaris' actually

12 | charged rates satisfy *Blum's* call for a "prevailing market rate." *Blum,* 465 U.S. at 895. Alaris

13 | would not be prejudiced by being awarded fees at its actually charged rates, because it will still

14 | recover what it actually spent. Further, Alaris provides no convincing reason why the higher

15 | "Los Angeles rates" are necessary to compensate it for its counsel's efforts, especially given that

16 | the purpose of Section 285 is to reimburse the injured party, not to award more than the party

17 | was required to pay. *Mathis,* 857 F.2d at 753. This is not to say that Alaris' counsel would

18 | never be entitled to a higher fee based on a "market rate" analysis, but its actually charged fees in

19 | this case represent a reasonable and fair rate that is within the Court's discretion to award.

20 | Accordingly, the Court uses Alaris' counsel's actual billing rates to calculate the lodestar.

21 |

22 | **D.     Fees on Fees**

23 |      Alaris requests a pro rata portion, or 66%, of its hours billed for its work on the issue of

24 | fees under Section 285, and it requests 100% of fees for its work on the Rule 11 motion. This

25 | represents Alaris' best estimate of the portion of the "fees on fees" work that relates to the three

26 | fee award categories specified by the Court. It also apparently only constitutes 85% of the hours

27 | actually worked in its fee request, excluding over 550 of hours billed and approximately 2,000

28 | hours worked but not billed. This pro rata adjustment and accounting, comprising 66% of the

1  fees for work on the Section 285 motion and 100% of the fees for work on the Rule 11 motion, is

2  a reasonable one and is accepted by the Court.

3

4  **E.      Lodestar Calculations and Attorney Fees**

5          The Court calculates the lodestar, based on Alaris' suggested allocation of hours and its

6  actual average billing rates, as follows (*see* [Corrected] Decl. of Scott P. McBride, Esq. in

7  Support of Alaris's Memorandum in Support of Alaris's Accounting for Fees and Costs under 35

8  U.S.C. § 285 and Sanctions Pursuant to Fed. R. Civ. P. 11 ¶¶ 49, 54, 55, 80, 88, 90 and Exs. 1-3,

9  40):

|  | 2004 | 2005 | 2006 | 2007 | Total |
|---|---|---|---|---|---|
| **Partner** Hours | 2,367.20 | 3,479.35 | 3,191.42 | 472.60 | 9,510.57 |
| *Actual Average Rate* | *$330.71* | *$370.83* | *$375.00* | *$370.63* | |
| Lodestar Product | $782,856.71 | $1,290,247.36 | $1,196,782.50 | $175,159.74 | **$3,445,046.31** |
| **Associate** Hours | 1,273.72 | 2,259.65 | 772.11 | 79.10 | 4,384.58 |
| *Actual Average Rate* | *$200.71* | *$209.16* | *$219.00* | *$220.00* | |
| Lodestar Product | $255,648.34 | $472,628.39 | $169,092.09 | $17,402.00 | **$914,770.83** |
| **Law Clerk** Hours | 413.35 | 69.90 | 122.00 | 111.05 | 716.30 |
| *Actual Average Rate* | *$155.00* | *$160.00* | *$165.00* | *$175.00* | |
| Lodestar Product | $64,069.25 | $11,184.00 | $20,130.00 | $19,433.75 | **$114,817.00** |
| **Paralegal** Hours | 401.75 | 435.12 | 14.96 | 0.00 | 851.83 |
| *Actual Average Rate* | *$130.00* | *$135.00* | *$135.00* | *$0.00* | |
| Lodestar Product | $52,227.50 | $58,741.20 | $2,019.60 | $0.00 | **$112,988.30** |
| **Total** | **$1,154,801.80** | **$1,832,800.95** | **$1,388,024.19** | **$211,995.49** | **$4,587,622.44** |

20          Thus, Alaris is entitled to $4,587,622.44 in attorney fees for its work on the three fee

21  award categories.  This represents a reasonable lodestar calculation for Alaris' work on these

22  categories, and it constitutes a reasonable pro rata amount of Alaris' total expenditure of

23  $11,000,000 in attorney fees and $2,000,000 in costs overall in this case.

24

25  **F.      Costs**

26          The Court finds that Alaris has adequately supported its request for $164,721.19 in non-

27  taxable costs associated with the three fee award categories, to which ICU makes no valid and

28  specific objection.

### G.    Liability for Rule 11 Sanctions

The parties disagree on the effect of the Court's award of sanctions under Rule 11 whose amount was "subsumed" by the dollar amount awarded under Section 285. The Court awarded the fees in this manner because some of the conduct by ICU's attorneys that gave rise to the fee award under Section 285, specifically the frivolous construction and assertion of the "spike" claims in the amended complaint, concurrently justified sanctions under Rule 11. Thus, the Section 285 award "subsumed" the dollar amount of any Rule 11 sanctions because, in the Court's view, the Section 285 award reasonably compensated Alaris for the offending conduct under Rule 11 and provided sufficient deterrence of that conduct for the future. *See* Fed. R. Civ. Pro. 11(c)(1)-(2).

ICU argues that the Court's levy of sanctions under Rule 11 did not specify whether the sanctions were awarded against ICU as a party, ICU's attorneys or both. Alaris brought its Rule 11 motion under both Rule 11(b)(2) and Rule 11(b)(3), thereby targeting ICU and its counsel, particularly counsel who signed the amended complaint that triggered the sanctions. The Fees Order concluded that ICU and its counsel engaged in conduct that violated both subdivisions of Rule 11. (*See* Fees Order at 19-26.) The Court found that ICU's frivolous construction of the term "spike," which drove the baseless infringement claims in the amended complaint, violated Rule 11(b)(2). Further, ICU's energetic, but wholly unreasonable pre-filing inquiry generated frivolous claim constructions and baseless infringement claims that did not have, and were never likely to have, evidentiary support, which violated Rule 11(b)(3). The April 2007 Fees Order concluded a Rule 11 inquiry, clearly brought under both subdivisions, that began in September 2005, if not earlier, thus ICU's counsel had adequate notice of their own potential Rule 11 liability, as is required under subdivision 11(c). While the Court is aware that "monetary sanctions may not be awarded against a represented party for a violation of Rule 11(b)(2)," the same conduct, or at least inextricably related conduct, justified sanctions under both 11(b)(2) and 11(b)(3). Fed. R. Civ. P. 11(c)(2)(A).

Because of these findings, and the overlap in offending conduct they demonstrate, ICU and its counsel are jointly and severally liable for any Rule 11 monetary sanctions that are based

1   on Alaris' having to defend against the "spike" claims in the amended complaint.  However, the

2   Court expressly granted fees and costs under Section 285, and not Rule 11, and intended that

3   primary liability for the dollar amount rest with ICU, and not its counsel.  At this stage, the Court

4   has sufficiently admonished ICU and its counsel for any improper conduct under Rule 11.  The

5   Court has also compensated Alaris for its efforts in defending against this conduct under Section

6   285.  To reiterate its prior holding in the Fees Order and to resolve any residual ambiguity in the

7   allocation of the amount of attorney fees and costs, the Court awards no monetary sanctions for

8   ICU's and its counsel's violations of Rule 11.

9

10  **H.      Interest**

11          Due primarily to the fact that the Court did not award fees and costs on the entire case,

12  the Court does not award Alaris prejudgment interest.  However, the Court awards Alaris post-

13  judgment interest on the fees and costs awarded by this Order and the Fees Order that shall run

14  from the date of the final entry of judgment in this case, as provided by 28 U.S.C. § 1961.  That

15  final judgment has not yet been entered, so no post-judgment interest is yet due.

16

17                                   **III.**

18                               **CONCLUSION**

19          In accordance with the Court's Fees Order, Alaris' is awarded $4,587,622.74 in attorney

20  fees and $164,721.19 in costs.  The entire award is granted under Section 285, and no monetary

21  sanctions are awarded under Rule 11.  Alaris will be entitled to post-judgment interest that shall

22  run from the date of the final entry of judgment in this case.

23

24          IT IS SO ORDERED.

25

26  DATED: *June 28, 2007*                    *Mariana R. Pfaelzer*

27                                            Hon. Mariana R. Pfaelzer
                                              United States District Judge
28

-9-